SONY COMPUTER ENTERTAINMENT INC., Sony Computer Entertainment America, and Mitsui Sumitomo Insurance Co., Ltd., Plaintiffs

v.

NIPPON EXPRESS U.S.A. (ILLINOIS), INC., and Nippon Express Co., Ltd., Defendants and Third–Party Plaintiffs

v.

Norfolk Southern Railway Company, Hyundai Merchant Marine Co., Ltd., and H & M International Transportation Inc., Third–Party Defendants.

No. 03 CIV. 2129(LLS).

United States District Court, S.D. New York.

April 9, 2004.

Bigham Englar Jones & Houston, NY, for Plaintiffs (Robert J. Phillips, of counsel).

Maloof Browne & Eagan, Rye, NY, for Defendants and Third–Party Plaintiffs (David T. Maloof Thomas M. Eagan, of counsel).

Memorandum and Order

STANTON, District Judge.

Plaintiffs move for partial summary judgment holding defendant Nippon Express U.S.A. (Illinois) Inc. ("Nippon") liable for the full amount of the plaintiffs' actual loss. Nippon cross-moves for summary judgment holding that Nippon's liability is limited. Nippon does not contest that the loss was caused by its agent Norfolk Southern's negligence.

*Facts*

Plaintiff Sony Computer Entertainment engaged Nippon to deliver four containers of Sony Playstation game platforms from Japan to Sony Computer Entertainment America in Pitman, New Jersey. Nippon issued two waybills for the transport and delivery of the containers; the waybills incorporated by reference Nippon's standard bill of lading. Nippon, a non-vessel-operating common carrier, in turn engaged Hyundai Merchant Marine Co. ("Hyundai") to carry the containers from Tokyo to a U.S. east coast container yard. Hyundai issued its own bill of lading to Nippon. Hyundai transported the containers to Seattle by ship, from Seattle to Chicago via the Burlington Northern Santa Fe Railroad, and from Chicago to Croxton Yard in New Jersey via the Norfolk Southern Rail-

way. Norfolk Southern issued EDI (Electronic Data Interchange) waybills, incorporating by reference the Norfolk Southern Circular in effect at the time, to Hyundai.

On the nights of October 22 and 23, 2001, unknown persons entered the open rear gate of Croxton Yard with tractors and stole two of the four containers, holding 1908 cartons of Playstations claimed to be worth over $1,300,000. The containers were in Norfolk Southern's custody at the time of the theft.

Plaintiffs first sued Norfolk Southern, who claimed the benefit of a clause in its Circular that it asserted limited its liability to $500,000. Plaintiffs ultimately settled with Norfolk Southern for that amount. They now sue Nippon for the balance of their loss.

### Discussion

#### 1. Jurisdiction

The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs Sony Computer Entertainment and Mitsui Sumitomo Insurance are Japanese corporations, and Sony Computer Entertainment America is a California corporation. Defendant Nippon is an Illinois corporation. This action has been discontinued, by stipulation, as against named defendant Nippon Express Co., Ltd. The citizenship of Hyundai and Norfolk Southern is immaterial because, as impleaded parties, they "fall within the ancillary jurisdiction of the courts and thus do not affect the court's original determination of whether diversity exists." 13B Wright & Miller, Federal Practice and Procedure § 3608, at pp. 453-44 (1984); see also *Fidelity and Deposit Co. v. City of Sheboygan Falls,* 713 F.2d 1261, 1266 (7th Cir.1983). The matter in controversy exceeds $75,000.

#### 2. The Package Limitation

Nippon's bill of lading contains what is known as a Himalaya Clause, which states that:

"Carrier" means Nippon Express U.S.A. (Illinois), Inc., the Underlying Carrier, the ship, her owner, Master, demise charterer, and if bound thereby, the time charterer and any substitute carrier, whether the owner, operator, charterer or Master shall be acting as carrier or bailee, as well as any of the agents, servants, and/or employees of the foregoing parties, including, but not limited to, stevedores, container yards, container freight stations, intermodal inland carriers (rail, truck, local truckers, and barge).

The effect of the Himalaya Clause is to include all the agents and sub-contractors of the carrier within the terms of the initial bill of lading. Here, the clause explicitly includes intermodal inland rail carriers.

Nippon's bill of lading also contains a clause that caps its potential liability. Clause 8.2(a) states that:

Compensation shall not, however, exceed U.S. $500.00 per container, package, or unit unless with the consent of the Carrier, the Merchant has declared a higher value for the goods, such higher value has been stated in the space provided on this Bill of Lading, ad valorem, freight shall be paid, in which case such higher value shall be the limit. However, the Carrier shall not, in any case, be liable for an amount greater than the actual loss to the person entitled to make the claim and the Carrier will not be liable for a claim for lost profits or consequential damages.

That clause's $500 per package limitation mirrors the $500 per package limitation on liability in the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1304(5) ("COGSA").

■ In addition to the language in Clause 8.2(a) discussing the Ad Valorem rate, Nippon's Waybill has a place on its front for the shipper to declare value. In the box headlined "Particulars Furnished

by Shipper," there is the following line: "Declared Value USD_____. If Merchant enters a value, the Ad Valorem rate will be charged." Sony Computer is an experienced shipper who used Nippon many times in the past. The waybill provided fair opportunity for Sony to avoid the $500 per unit limitation by declaring a higher value and paying a higher price. See *General Electric Co. v. MV Nedlloyd,* 817 F.2d 1022, 1029 (2nd Cir.1987) ("the language on the back of the Nedlloyd document incorporating COGSA's provisions and the space for declaring excess value on the front are sufficient notice of the limitation of liability and the means of avoiding it").

Plaintiff has lost 1908 cartons, thus capping potential liability under the bill of lading at $954,000. The limitation clause, combined with the Himalaya Clause, limits the liability of "the Carrier" (collectively Nippon, and its agents Hyundai and Norfolk Southern) to $954,000. Nippon is thus potentially liable for only $454,000, because Norfolk Southern has already paid $500,000 to the plaintiff. See *Thyssen, Inc. v. S.S. Eurounity,* 21 F.3d 533, 540–541 (2nd Cir.1994) (the COGSA $500 limitation "establishes that a plaintiff is entitled to a single recovery not to exceed the equivalent of $500 per package" even if there are multiple defendants).

### 3. *Application of "law of that country" to the Inland Loss*

Clause 7.3 is an alternative liability provision, under which the application of the particular principles governing liability depends on the location of the loss:

> If it can be proved where the loss or damage occurred, the liability of the Carrier for the loss or damage to the goods will be as follows:
>
> (a) With respect to loss or damage occurring during the period of carriage by sea, to the extent prescribed by COGSA or the applicable national legislation of other nations, as provided for [in] Clause 3 (Paramount Clause) hereof and in accordance with this Bill of Lading.
>
> (b) With respect to loss or damage occurring during the period of carriage by land or inland waterways in any country for which this carrier has assumed responsibility of carriage, in accordance with the applicable law of that country, the inland carrier's contracts of carriage and tariffs in force, and this Bill of Lading.

The parties suggest various arguments as to what the applicable law is, referring to (a) COGSA, and (b) the Harter Act, and (c) the Carmack Amendment.

### a) *COGSA*

Under the heading "PARAMOUNT CLAUSE," Clause 3.1 of the bill of lading states that:

> Except as otherwise provided herein, for shipments by sea originating from or destined to the United States of America, its territories or possessions and between coastal port [*sic.*], this Bill of Lading shall have affect [*sic.*] subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1936 (COGSA), 46 U.S.C. Sec. 1300–1315, which is incorporated herein and made a part hereof, and nothing herein contained shall be [a] surrender by the Carrier of any of its rights and immunities or an increase of any of its responsibilities, liabilities, or limitation of liability under said Act.

Clause 3.2 further provides that:

> The provisions stated in said Act except as specifically provided otherwise herein shall govern before loading on and after discharge from the vessel and through-

out the entire time the Goods are in the custody of the Carrier.

Thus, by contract COGSA applies to all the stages of the shipment, including the loss in the Croxton Yard. "COGSA only applies by its own force, however, during 'the period from the time when the goods are loaded on to the time when they are discharged from the ship." ' See *Hartford Fire Insurance Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 557 (2nd Cir.2000); 46 U.S.C.App. §§ 1301(e), 1302. Therefore to the extent COGSA applies to this loss, it applies only by contract, not by its own force, as the loss occurred during inland transport.

Application of COGSA to this inland loss thus adds a separate, consistent source of the $500 per package limitation.

### b) *Harter Act, 46 U.S.C. 190*

■ This Act, which forbids clauses relieving vessels of liability for damage to cargo, was largely superseded by COGSA and does not apply here. Harter "governs the responsibilities of carriers until 'proper delivery' of the cargo has been made." *Colgate Palmolive Co. v. M/V "Atlantic Conveyor"*, 1996 WL 742861, at *3 (S.D.N.Y. Dec.1, 1996). "Proper delivery occurs when the cargo is ready for inland transport." *Id.* at *5. The loss here occurred following cross-country transport to New Jersey, long after the cargo was prepared for inland transport under the meaning of the Harter Act, so it does not apply.

### c) *The Carmack Amendment*

The Carmack Amendment, 49 U.S.C. § 11706, governs the liability of rail carriers such as Norfolk Southern. Under § 11706(e), rail carriers are liable "for the actual loss or injury to the property." Section 11706(c)(1) provides that:

A rail carrier may not limit or be exempt from liability imposed under subsection (a) of this section except as pro-

vided in this subsection. A limitation of liability or of the amount of recovery or representation or agreement in a receipt, bill of lading, contract, or rule in violation of this section is void.

The effect of that provision in § 11706, however, is diluted by the Staggers Rail Act, 49 U.S.C. § 10502(e), which provides: "Nothing in this subsection or section 11706 of this title shall prevent rail carriers from offering alternative terms."

■ Norfolk Southern sets out such alternative terms in Section 8.2.1(3) of its Circular:

NS offers two alternative liability provisions: "Standard" liability and "Carmack" liability. UNLESS LANGUAGE EXPRESSLY SELECTING "CARMACK" IS INCLUDED IN THE ORIGINAL SHIPPING INSTRUCTIONS, ANY TENDER OF FREIGHT FOR TRANSPORTATION UNDER THIS CIRCULAR WILL BE ACCEPTED UNDER "STANDARD" LIABILITY COVERAGE PROVIDED AND NOT UNDER "CARMACK" COVERAGE.

Since it appears that "Carmack" coverage was not selected, the Playstations were shipped under Norfolk Southern's "Standard" coverage, which is legitimate under the Staggers Rail Act, and therefore § 11706(c)(1) of the Carmack Amendment does not affect the validity of the liability limit.

No "applicable law of that country" under Clause 7.3(b) of the bill of lading affects Nippon's liability for the inland loss.

### 4. *Effect of Norfolk Southern's $250,000 Liability Limitation*

Norfolk Southern's "Standard" liability coverage is described in Section 8.3.3(e) of its Circular under the heading "Standard Liability Provisions and Restrictions":

Unless amended by written agreement signed by an authorized NS official prior to shipment (see "Counteroffer" in Terms and Conditions" in "General Contract Conditions" section), NS's liability for loss, damage or delay to any shipments under this circular shall be limited to the lesser of the destination value of the cargo or $250,000.

Nippon argues that this $500,000 limit (two containers at $250,000 each) is all that plaintiffs may recover from this loss. Since they have been paid $500,000 by Norfolk Southern, says Nippon, they can recover nothing further from Nippon.

■ Nothing in Norfolk's Circular extends Norfolk's liability limitation to Nippon.[1] Norfolk's Circular deals only with Norfolk Southern's liability, and does not purport to address the relationship between the shipper and Nippon.

The relevant provision in Nippon's bill of lading is Clause 7.3(b). It provides that the liability of the Carrier will be " . . . in accordance with the inland carrier's contracts of carriage and tariffs in force" as well as with the "law of that country" and with "this Bill of Lading." Nippon argues that the reference to the inland carrier's [i.e. Norfolk Southern's] contract of carriage adopts Norfolk's liability limitation clause as the one between plaintiffs and Nippon. To give such an effect to the reference to the inland carrier's "contracts of carriage" would annul the specific $500 limitations of liability to which the parties agreed in Nippon's bill of lading, and which is required by COGSA, which the parties agreed would apply.

As stated above, Nippon's bill of lading not only stipulated the $500 limitation as one of its own terms, it also specified in Clause 3.2 that "except as specifically provided otherwise herein," COGSA would apply to inland as well as ocean losses "throughout the entire time the goods are in the custody of the carrier."

The allusion to the inland carrier's contracts was general, as one of three items to be considered in determining the liability of the carrier (the other two being the law of that country and the terms of Nippon's bill of lading). That broad reference is not specific enough to qualify the Norfolk Southern's different liability limitation as one "specifically provided otherwise herein" and thus *sub silentio* emasculate the $500 figure in COGSA. Furthermore, the clause allowing for exceptions, if "specifically provided," applies only to the effect to be given COGSA. The bill of lading nowhere allows an exception to its own specific $500 limitation, which use of the Norfolk figure would flatly contradict.

Accordingly, the limitation in Norfolk Southern's circular does not reduce the amount specified in Nippon's contract with the plaintiffs, although the actual amount paid by Norfolk Southern is properly deducted from the amount otherwise to be paid by Nippon.

### Conclusion

Defendant Nippon's liability is limited to a sum not exceeding the principal amount of $454,000. Pursuant to the agreement of the parties, the proof of the actual amount of damages will take place later.

So ordered.

---

**1.** By contrast, Hyundai does have a clause in its bill of lading that limits Hyundai's liability to that of the inland carrier, but Nippon's bill of lading has no similar language.